Samuel A. Spiegel, J.
This is a motion by defendant New York City Off-Track Betting Corporation (hereafter referred to as O.T.B.) for summary judgment dismissing the complaint, pursuant to CPLR 3212.
Plaintiffs seek judgment in the sum of $19,001.80 alleging that they purchased a ticket representing a superfecta wager on the O.T.B. letter combination “CEAH” in the 8th race at Roosevelt Raceway on February 3, 1972. Defendant O.T.B.’s defense is that plaintiffs’ selection “CEAH” was not the winning superfecta combination for that race and that one of the horses selected by plaintiffs did not even run in the race.
A superfecta race is a system of pari-mutuel betting in which the bettor must select the first, second, third and fourth place horses in their exact order of finish. Plaintiffs bet on four horses which, at the track, originally held numbered post positions 3, 5, 1 and 8 and wagered that they would finish in that order. The defendant designates horses by letter rather than numbers and the corresponding letters bet by plaintiffs were “CEAH”. Subsequent to plaintiffs’ wager at O.T.B., the horse designated by post position as number 1 and by O.T.B. as letter A was withdrawn from the race and replaced by another horse. At the track, the new horse took the same number 1 post position as the withdrawn horse and the numbers “ 3518 ” were the winning superfecta combination paying $19,001.80. However, when plaintiffs sought to collect on their “ CEAH” ticket at O.T.B., they were refused payment. The defendant contends that the “A” horse that had been withdrawn was replaced by the new horse having the designated letter I and that, therefore, the winning combination was “ CEIH ” and not “ CEAH ”.
*937 The tickets which O.T.B. issues to its bettors indicate the O.T.B. letter designations of the horses upon which the bet was placed. The letter designation assigned to each horse does not change for that particular race. A list of the letter designations assigned to all the horses that may be running in the races at the track is compiled and printed on 11 throw away” sheets which are available to the public at all O.T.B. offices and is also indicated on racing sheets posted in each O.T.B. office.
The “ throw away” sheets are prepared before the track opens and before the track determines which of the possible entries will actually run in the race. Because of this, they frequently contain the names and letter designations of more horses than will actually run in the race. The extra horses are listed because they may be entered in the race to substitute for a horse that may be withdrawn. These extra horses are called “also eligibles”.
Wagers are accepted by O.T.B. on any of the horses which may run in the race, including the “ also eligibles ”, until the track officially determines which horses will run and which will not. As soon as a horse is “ scratched ”, that is, officially declared by the track to be removed or withdrawn as a contestant in that race, O.T.B. ceases accepting further bets on that horse and tickets previously issued on that horse are rendered void and money so wagered is returnable to the bettor in full.
When a horse is “ scratched ”, the O.T.B. letter designation assigned to that horse is not reassigned to the horse which replaces it. Instead, the substituted horse retains the O.T.B. letter designation which was originally assigned to it as printed on the “ throw away ” sheet.
However, the system at the track is quite different. Horses are assigned numbers which reflect their anticipated position in the starting gate with the horse closest to the rail being assigned number 1. If one of the horses originally scheduled to run in the race is “ scratched ”, the “also eligible” is entered in the race and is placed in the starting gate position which the original horse was to occupy and is given the corresponding number for betting purposes. This is possible because bets are not accepted at the track until the horses which will run in the race are officially established.
The reason O.T.B. employs letter designations instead of numbers is that it begins accepting bets before the track opens *938 and the track does not assign official post position numbers until it begins to accept bets just before racing starts.
If O.T.B. used number designations, the number it assigned to an “ also eligible ’ ’ would have to remain constant throughout betting on a race. Yet, at the track, if one of the original horses were “scratched”, the “also eligible” would replace it and also the track would assign to it the ‘ ‘ scratched ’ ’ horse’s post position number. The horse would thus bear two different numbers — a track number and an O.T.B. number. It is to avoid the confusion that this situation might create that O.T.B. uses letter designations and cannot change them regardless of what happens at the track.
Paragraph 3.8B of O.T.B.’s Official Operating Procedures, Rules and Regulations provides:
“ If a horse is scratched or declared a non-starter * * * all superfecta tickets previously issued designating such horse shall be refunded and the money deducted from the gross pool. ’ ’
Paragraph 4.7 of said rules states that, “in the event the corporation specifies that horses are to be designated by letters instead of numbers then only such letter designate will constitute a valid horse selection.”
Thus, all bets accepted on the O.T.B. horse designated letter “A” became void when that horse was withdrawn. Money so wagered was not included in the pool and was refundable to the bettor. Since the track takes no bets until the official entries are established, it would not have been possible for anyoné to place a bet at the track on that “ A ” horse. Accordingly, plaintiffs’ contention that “ 3518 ” was the winning combination at the track does not warrant the conclusion that their O.T.B. ticket was a winner. The “A” horse that plaintiffs bet on at O.T.B. was clearly a different horse from the number “ 1 ” horse which finally ran at the track. The horse plaintiffs bet on was named Aero Circle (“A”). That horse never ran in the race, but rather was replaced by Moonestone Bay (“ I ”). Although both above-named horses, at different times, held the number 1 position at the track, bettors there could only have bet on Moonestone Bay because Aero King had been “ scratched ” prior to the opening of betting. On the other hand, plaintiffs, having bet at O.T.B. on Aero King were not entitled to the winning payoff, but rather only to a refund pursuant to O.T.B. rules.
Further, plaintiffs acknowledge that horses are selected at O.T.B. by letter combinations and are, therefore, precluded *939 from claiming that they placed their wager on post position numbers rather than specific horses. It is clear that the winning letter combination was “ CEIH ” and not “ CEAH ” as selected by plaintiffs.
The plaintiffs’ position is not aided by defendant’s use of a poster advertising the $19,001.80 payoff of February 2, 1973 with the winning letters listed as “CEAH”. Clearly, the poster was mistaken in its identification of the winning letter combination. However, plaintiffs saw this poster months after they placed their bets. Thus, any error contained in the poster did not affect their selection for the race. The poster does not create any liability of O.T.B. for payment of $19,001.80 to the plaintiffs. Only a winning O.T.B. ticket would do that, and plaintiffs are not in possession of such a ticket.
Further, plaintiffs ’ allegations relative to whether they could have bet on horse “ I ” prior to the withdrawal of horse “ A ” is irrelevant to their present claim. Plaintiffs do not allege that they attempted to place a bet on horse “ I ” or that O.T.B. refused such a bet.
The other conclusory allegations made by plaintiffs are also insufficient to raise any triable issues. If the horses which plaintiffs selected would have finished in the order chosen by plaintiffs, they would have collected on their bet. The chance of winning is all that could be expected by plaintiffs. Defendant O.T.B. was not responsible for the withdrawal of the horse having the designated letter “A”.
Plaintiffs freely made their selections and cannot now seek to collect as winners when one of the horses they selected did not compete in the race.
Accordingly, defendant’s motion for summary judgment dismissing the complaint is granted.